After some deliberation, the court disagreeing in opinion, the chancellors Gaillard, James and Thompson, delivered the judgment of th,e court, for the reversal of the decree :
The respect I feel for the opinion of the judge whose decree is appealed from, has made me give to this case the best consideration a short time would allow.
The question is, as he states it, whether the defend dant,.B.obert Carnes, is entitled to any, and what portion of the personal estates left by bis sisters of the half blood, who have died intestate ? Or it may be stated thus: Whether the mother is entitled to their estates exclusively ?
It is admitted that the mother would be entitled exclusively under the aet of 1791, abolishing the rights of primogeniture, See. if the act of 1797, to amend that act, were not in the way. By the operation of the act of 1791, a surviving parent, the mother for instance, got the whole estate of her husband, who died intestate, and by a second marriage, carried it off with her into another, family, strangers to the blood of the first husband. The" *417 'legislature viewed this as a mischief, and to remedy it, gassed the act of '1797. •
Let us consider the preamble to this act: « Whereas it hath been adjudged by the courts upon the construction of the aforesaid act, (referring to the act of 1791,) that in cases in which persons die intestate, leaving no wife or children or lineal descendant, but leaving father or mother, although such intestate also leave brothers and sisters, or brother and sister, or brothers or sisters, one or more, that the father or mother is entitled to receive the whole estate, to the exclusion of. such other of his or her kindred aforesaid.” The cases in which it had been adjudged by the courts, that the surviving parent took the estates of the children who died intestate, were all of them cases in which the children were the children of both parents.
A. married, we will say, B. and had by her two children, C. and D. B. died. A. afterwards married E. and had two children by her, F. and G. A died intestate, leaving his wife E. and three or four children. If either of the children of the first marriage, died after-wards intestate, his or her share of the intestate’s estate, under the act of 1791, went to his brother or sister of the whole blood; not to the wife of the intestate, because she was not his or her mother; and if so, children of the half blood, that .is, brothers and sisters of the half blood, were not in the contemplation of the legislature when they passed the act of 1797, and the words ee brothers and sisters, or brother and sister, or brothers or sisters,” used in the preamble, must be understood of the -whole blood.
It is correctly said in the decree of the circuit court, that where the act of 1791 means to discriminate between the brothers and sisters of the whole and of the half blood, it does .so distinctly and clearly.
The counsel for the appellant has observed,, that in the fourth clause of the act of 1791 the words brothers and sisters are used twice without any terms of restriction, and that they there mean the whole blood.
This is so; but they so evidently and appropriately *418 refer fo the words immediately preceding in the sarafc clause, “ brothers and sisters, or brother and sister o. the whole blood,” that the insertion of the words ee of the whole blood” afterwards would have been superfluous. The clause upon which this question turns, enacts, 4i That in all cases in which any person shall die intestate, leaving neither wife, child or children, or lineal descendant, but leaving a father or mother, and brothers and sisters, or brother and sister, or brothers, or sisters, orte or more, that the estate real and personal of such intestate, shall be equally divided amongst the father, or if he be dead, the mother, and such brothers and sisters, as may he living at the time of the death of such intestate, so that such father or mother, as the case may be, and each brother and sister so left living by the intestate, shall each take a share of his estate real and personal: Provided always, that the issue of any deceased brother or sister, if more than one, shall, take, amongst themselves, the same shave which their father on mother if living would have taken ; and if but one issue, then he or she shall take the share which bis or her farther or mother would have taken if living.”
In every clause of the act of 1791, in which the children of a brother or sister are provided for, it is the children of a brother or sister of the whole blood. Whatever construction shall be put upon the words brother and sister in the proviso, must be put upon the same words in the clause of the act in 1797, to which the proviso is attached, there being no repugnance between them, If then, the expression brothers and sisters or brother and sister in the clause, comprehends the half as well as the whole blood, the issue of a brother of the half blood is put upon a footing with a brother of the whole blood, which would reverse the situation in which they are placed by the act of 1791, for by that act, the children of a brother of the whole blood, take with a brother of the half blood. Many' absurd consequences would follow from this con» struction in favor of the half blopd, and we cannot shut our eyes to them. If the meaning of a statute he doubtful, the consequences are to he considered in the *419 construction, and if in this case we say that the legislature intended brothers and sisters of the half, as well as of the whole blood, we shall be bound to say so in every other case which may occur.
It is said, that under our old act of distribution, brothers and sisters of the half blood were let in equally with brothers and sisters of the whole blood ; but the manner of computing the degrees of kindred is prescribed by the act of 1791, and the issue of the brother of the whole, is expressly put on a footing with a brother of the half blood. The act of 1797 refers to the act of 1791, and relates to the same subject. Now all acts that relate to the same subject, must be taken to be one system, and construed consistently.
The general words brothers and sisters are certainly broad enough to include brothers and sisters of the half blood ; but the act of 1797, is open to two constructions, one consistent, and the other inconsistent with the act of 1791. I am bound, I think, to adopt the former. This view of the subject, appears to me to be warranted by sound principles of construction, and consistent too, with the object of the act of 1797.
I am, therefore, of opinion, that the decree of the circuit court be reversed ; and my brethren, Thompson and James concurring with me, it is reversed.
Theodore Gailsard.